1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOM TRAN,<br><br>                                  Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Commissioner of Social Security,<br><br>                           Defendants. | Case No.:  17-cv-2521-DMS(BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS** |

Plaintiff Thom Tran ("Plaintiff") brought this action for judicial review of the Social Security Commissioner's ("Defendant" or "Commissioner") denial of her claim for Title XVI Supplemental Security Income.  ECF No. 41-1 at 1.  Before the Court are Plaintiff's Motion for Judgment Reversing the Commissioner's Decision [ECF No. 41-1], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment [ECF No. 44], and Plaintiff's Reply [ECF No. 45].

1

This Report and Recommendation is submitted to United States District Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED**, Defendant's Cross-Motion for Summary Judgment be **DENIED**, and the case be **REMANDED** for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on March 20, 2012, alleging disability commencing December 1, 2011.  Administrative Record ("AR") 16.  The claim was denied initially on September 6, 2012 [id. at 68], and upon reconsideration on March 27, 2013.  Id. at 16.  On July 26, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") [id.], which was held on July 30, 2014.  Id. at 16, 35. On September 18, 2014, the ALJ issued a written order finding Plaintiff was not disabled  at step two of the evaluation process because she "does not have an impairment or combination of impairments that has significantly limited [] [her] ability to perform basic work-related activities for 12 consecutive months."  Id. at 18.  Plaintiff's request that the Appeals Council review the ALJ's decision was denied on March 16, 2016.  Id. at 7.  That same day, the ALJ's decision became the final decision of the Commissioner.  Id.

On December 15, 2017, Plaintiff filed a complaint seeking judicial review of the denial of her application for Social Security Disability Insurance Benefits for lack of disability.  ECF No. 1. On July 24, 2018, Defendant filed a motion to dismiss arguing that the Court lacked subject matter jurisdiction over the case because Plaintiff had not exhausted her administrative remedies.  ECF No. 17 at 3.  Plaintiff opposed Defendant's motion to dismiss [ECF No. 21], and Defendant filed a reply.  ECF No. 22.  On October 19, 2018, District Judge Dana M. Sabraw issued an order granting Defendant's motion to dismiss holding that Plaintiff's request for judicial review was premature.  ECF No. 24 at 1, 5.  On June 18, 2021, Plaintiff filed a motion requesting the Court reopen the case.  ECF No. 28.  On July 16, 2021, Defendant filed a response to Plaintiff's motion agreeing that this case should proceed on the merits.  ECF No. 33 at 2.  On

1   August 17, 2021, Plaintiff's motion to reopen the case was granted and a briefing schedule was

2   set.  ECF No. 38.

3   ## ALJ's DECISION

4   At step one of the sequential review, the ALJ determined that Plaintiff had not engaged

5   in substantial gainful activity during the relevant time period (since March 20, 2012).  AR 17.  At

6   step two, he determined that Plaintiff "has the following medically determinable impairments:

7   asthma, osteoarthritis, headaches, depression, and post-traumatic stress disorder (20 CFR

8   416.921 *et seq.*)."  Id. at 18.  The ALJ rejected or discounted the opinions of Plaintiff's treating

9   and examining doctors, the opinions of the State agency medical consultants, Plaintiff's claims,

10  and the limitations identified by Plaintiff's son.  Id. at 19-28.  The ALJ then determined that

11  Plaintiff "does not have an impairment or combination of impairments that has significantly

12  limited (or is expected to significantly limit) [her] ability to perform basic work-related activities

13  for 12 consecutive months."  Id. at 18, 27.  As a result, the ALJ stopped his analysis at step two

14  and concluded that Plaintiff was not disabled.  Id. at 16-27.

15  ## STANDARD OF REVIEW

16  Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial

17  review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is

18  limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence

19  and contains no legal error.  Id.; see also Miner v. Berryhill, 722 Fed. Appx. 632, 633 (9th Cir.

20  2018) (We review the district court's decision de novo, disturbing the denial of benefits only if

21  the decision "contains legal error or is not supported by substantial evidence.")

22  (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

23  Substantial evidence is "more than a mere scintilla but may be less than a

24  preponderance."  Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021) (quoting Molina v. Astrue,

25  674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation marks and citations omitted), *superseded by*

26  *regulation on other grounds*.  It is relevant evidence that a reasonable person might accept as

27  adequate to support a conclusion after considering the entire record.  Id.; see also Biestek v.

28  Berryhill, 139 S.Ct. 1148, 1154 (2019).  "In determining whether the Commissioner's findings

1  are supported by substantial evidence, [the court] must review the administrative record as a

2  whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's]

3  conclusion." Laursen v. Barnhart, 127 Fed. Appx. 311, 312 (9th Cir. 2005) (quoting Reddick v.

4  Chater, 157 F.3d 715, 720 (9th Cir. 1998)).  Where the evidence can reasonably be construed

5  to support more than one rational interpretation, the court must uphold the ALJ's

6  decision.  See Ahearn, 988 F.3d at 1115 (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir.

7  2001)).  This includes deferring to the ALJ's credibility determinations and resolutions of

8  evidentiary conflicts. See Tanielu v. Saul, 839 Fed. Appx. 193, 194 (9th Cir. 2021)

9  (citing Ahearn, 988 F.3d at 1115 ("[t]he ALJ is responsible for determining credibility, resolving

10  conflicts in medical testimony, and for resolving ambiguities," and "we reverse only if the ALJ's

11  decision was not supported by substantial evidence in the record as a whole")).  Even if the

12  reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must

13  set aside the decision if the ALJ failed to apply the proper legal standards in weighing the

14  evidence and reaching his or her decision.  See Miner, 722 Fed. Appx. at 633.  Section 405(g)

15  permits a court to enter judgment affirming, modifying, or reversing the Commissioner's

16  decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social

17  Security Administration for further proceedings.  Id.

18       At step two of the sequential review, an ALJ assesses whether the claimant has a

19  medically severe impairment or combination of impairments that significantly limits her ability

20  to do basic work activities.  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citing 20 C.F.R.

21  § 404.1520(a)(4)(i).  "[A]n ALJ may find that a claimant lacks a medically severe impairment or

22  combination of impairments only when his conclusion is 'clearly established by medical

23  evidence[,]'" thus a reviewing court "must determine whether the ALJ had substantial evidence

24  to find that the medical evidence clearly established that [the claimant] did not have a medically

25  severe impairment or combination of impairments." Id. at 687.  This evaluation is a de minimis

26  screening device used to dispose of groundless claims.  Tadesse v. Kijakazi, No. 20-16064, 2021

27  WL 5600149, at *1 (9th Cir. Nov. 30, 2021) (citation and quotation omitted).  If the ALJ is unable

28

17-cv-2521-DMS(BLM)

1  to clearly determine the effect of the claimant's impairments on her ability to work, the

2  evaluation should not end at step two.  <u>Webb</u> 433 F.3d at 687.

3  ### DISCUSSION

4  At step two, the ALJ determined that Plaintiff had five medically determinable physical

5  and mental impairments but that none of them limited her ability to perform basic work-related

6  activities.  AR 16-27.  In reaching this decision, the ALJ discounted the opinions of Plaintiff's

7  treating and examining physicians, the opinions of State agency medical consultants, the

8  testimony and information provided by Plaintiff, and the third-party lay evidence provided by

9  Plaintiff's son.  Plaintiff argues that the ALJ's decision is not supported by substantial evidence

10  and challenges all of the reasons provided by the ALJ for rejecting the identified evidence.  <u>See</u>

11  <u>generally</u> ECF No. 41-1.  Defendant counters that the ALJ properly discounted the evidence and

12  that there is substantial evidence supporting his decision.  ECF No. 44 at 4-11.

13  A.   <u>Medical Opinions</u>

14  Plaintiff argues the ALJ improperly rejected the medical opinions of Plaintiff's treating

15  physicians (Drs. Harry Henderson, James Santiago Grisolia, and Nadine Sidrick), the medical

16  opinion of Plaintiff's examining physician (Dr. Milton Lessner), as well as the state's consulting

17  physician (Drs. M. Yee and G. Spinka).  ECF No. 41-1 at 5-16.  Specifically, Plaintiff argues the

18  ALJ's decision rejecting those medical opinions is not supported by substantial evidence.  <u>Id.</u>

19  Defendant contends that the ALJ properly explained why he gave these medical opinions little

20  weight.  ECF No. 44 at 7.

21  1.   <u>Relevant Law</u>

22  In evaluating medical opinions, the regulations distinguish among three types of

23  physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.

24  20 C.F.R. §§ 404.1526(c),(e); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  While an ALJ

25  is not bound by the opinion of a treating physician, the opinion of a treating doctor generally

26  should be given more weight than opinions of doctors who do not treat the claimant.  <u>See</u> <u>Turner</u>

27  <u>v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1222 (9th Cir. 2010) (citing <u>Lester</u>, 81 F.3d at 830-31

28  (9th Cir. 1995)).  If a treating doctor's opinion is not contradicted by another doctor, it may be

rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id.  When the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion only by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Id.; see also Fennell v. Berryhill, 721 Fed. Appx. 652, 654 (9th Cir. 2018) ("[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (quotation and citation omitted).

> If a treating doctor's opinion is not afforded controlling weight, the ALJ must consider the "length of the treatment relationship and the frequency of examination" as well as the "nature and extent of the treatment relationship" … in addition, the ALJ must still consider the other relevant factors such as "the amount of relevant evidence that supports the opinion and the quality of the explanation provided" and "the consistency of the medical opinion with the record as a whole."

Clay v. Colvin, No. 14cv2893-BAS(BLM), 2017 WL 1478618, at *7 (S.D. Cal. Apr. 25, 2017) (citing West v. Colvin, No. 3:14-CV-01764-SU, 2015 WL 4935491, at *8 (D. Or. Aug. 18, 2015) (quotations and citations omitted).  Similarly, an examining physician's opinion must be given greater weight than the opinion of a non-examining physician, and "even if it is contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Perez v. Saul, 855 Fed. Appx. 365, 366 (9th Cir. 2021) (citing Lester, 81 F.3d at 830-31).  "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record."  Townsend v. Colvin, No. SACV 13-402-JEM, 2013 WL 4501476, at *6 (C.D. Cal. Aug. 22, 2013) (internal quotations omitted) (citing Lester, 81 F.3d at 830-31; Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)).

///

///

///

///

2.   <u>Treating Physician Opinions</u>

The Administrative Record contains Dr. Sidrick's treatment notes from seven different occasions between April 2012 and May 12, 2014, and a report from May 12, 2014. AR 230, 236-38, 250-53.  Dr. Sidrick's handwritten treatment notes are difficult to discern but indicate that Plaintiff sought treatment for mental and physical complaints, including headaches, asthma, neck pain, back pain radiating into her legs, knee pain, osteoarthritis, insomnia, depression, and memory impairment. <u>Id.</u>  In Dr. Sidrick's May 12, 2014 report, she states that she has treated Plaintiff for "the following severe medical problems, including: (1) possible degenerative disc disease of the cervical spine; (2) degenerative joint disease of the lumbar spine at L5-S1; (3) Asthma; (4) Memory impairment" and that Plaintiff "is taking potent medications for psychiatric impairments that cause sedation." AR 279.  Dr. Sidrick advises that Plaintiff "has been suffering from chronic neck, low back pain, and head pain" and that "[t]he pain is accompanied by dizziness, photophobia and blurred vision."  AR 279.  Dr. Sidrick opines that Plaintiff "also has arthritis and chronic bilateral knee pain radiating to the lower extremities. The pain is only minimally relieved by Tylenol#3 and over the counter medications such as Tylenol and Motrin." AR 279.  Regarding Plaintiff's physical impairments, Dr. Sidrick opines that Plaintiff

> has degenerative disc disease of the cervical and lumbar spine that affect her ability to walk and stand.  She cannot stand or walk for more than fifteen to twenty minutes without taking a break.  She cannot lift or carry anything over 20 pounds on an occasional basis. She is restricted from unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, driving automotive equipment, and exposure to dust and fumes.

AR 279-280.

The record also contains a report from Dr. James Santiago Grisolia dated August 31, 2013.  AR 248.  In that report, Dr. Grisolia opined that Plaintiff has a "greater than 10-year history of headaches, which are holocranial variably throbbing and daily" and "are accompanied by photophobia, sonophobia and at times, there is so much dizziness that she will need help from her family even to walk to the restroom."  AR 248.  Dr. Grisolia continued that Plaintiff "suffers from bilateral knee pain and has low back pain with diffuse radiation into both lower extremities" and "is also severely depressed."  AR 248.  Lastly, Dr. Grisolia opines that Plaintiff

"has chronic low pain, osteoarthritis with multiple joint pains as well as headaches", which on their own "is of disabling intensity and severity occurring on a daily basis and impeding her ambulation at times due to severe intermittent vertigo."  AR 248.

Finally, the record contains a report from Dr. Harry Henderson dated July 16, 2014.  AR 281-82.  In that report, Dr. Henderson states that he has treated Plaintiff "since March 10, 2012 on a monthly to bi-monthly basis" and that in writing his report, he reviewed the treatment notes of Drs. Sidrick, Lessner, and Grisolia, as well as his own treatment notes.  AR 280.  Dr. Henderson opines that Plaintiff's most severe impairments are the "result[] from her past as a victim of domestic violence and post-traumatic disorder that cause her to be tired and exhausted due to side effects of psychotropic medications."  AR 281.  Dr. Henderson continues that Plaintiff "becomes quickly confused when asked to [answer] simple questions. She shows poor energy, helplessness and there were frequent forgetfulness.   Reality contact is compromised by depressive affect and periods of depersonalization."  AR 281.  Dr. Henderson further opines that "[Plaintiff]'s mental disability is permanent and stationary since she began treatment in March 2012" and that she "has marked restrictions of activities of daily living, marked difficulties in maintaining social functioning and often deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner in work settings or elsewhere."  AR 282.  Dr. Henderson also assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 48.[1]  As a result, Dr. Henderson opined that "[t]he combination of her chronic headaches and severe back pain, joint pain, diabetes, chronic vertigo coupled with her depression would prevent her from gainful employment" and that "[s]he would not be able to compete in the workplace."  AR 282.  The ALJ gave "little weight" to all of these doctors' opinions.  AR 21-25.  The ALJ did not identify any doctors who provided an opinion that was contradictory to the opinions provided by

---

[1] "A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)" See AR 24 citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000) ("DSM-IV-TR").

17-cv-2521-DMS(BLM)

these doctors [id.] so the ALJ was required to provide clear convincing reasons supported by substantial evidence for rejecting the opinions.  See Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014).  He failed to do so.

Initially, the Court notes that the ALJ discounted the medical opinions of Drs. Lessner, Henderson, and Sidrick, as well as Plaintiff's subjective testimony, regarding Plaintiff's mental limitations because her "limited treatment for her depression was routine and conservative, primarily consisting of medications and follow-up visits." AR 22-24.  However, as indicated by Plaintiff and documented in the medical record, she was financially unable to afford additional treatment.  See ECF No. 41-1 at 19; see also AR 227 (Dr. Sidrick noting that Plaintiff "has no funding to cover a psychiatrist."); AR 236 (Dr. Sidrick noting that Plaintiff "can't afford" her prescribed medications).  Plaintiff's inability to pay for more consistent or specialized treatment does not constitute a legitimate reason for discounting the doctors' opinions or Plaintiff's testimony.  See Trevizo v. Berryhill, 871 F.3d 664, 680-81 (9th Cir. 2017) ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.") (citation and quotations omitted); Smith v. Berryhill, 704 Fed. Appx. 652, 653 (9th Cir. 2017) ("If a claimant provides a good reason for not taking medication, his symptom testimony cannot be rejected for not doing so.") (citation and quotations omitted).

The ALJ rejected Dr. Sidrick's opinions regarding Plaintiff's physical ailments because they were based on a check off form dated May 12, 2013 that "did not provide the basis or an explanation as to how these limitations were determined." AR 22.  The ALJ also complained that the check off form and Dr. Sidrick's typed letter did not reference any clinical signs or laboratory tests and that her opinions were not supported by her treatment records.  Id.  The ALJ voiced the same complaint as to Dr. Sidrick's opinion of Plaintiff's mental limitations.  AR 25. The ALJ noted that Dr. Sidrick's treatment notes document Plaintiff's asthma as "stable" on two occasions, that Plaintiff's lungs and heart were "normal", and that Plaintiff "did not allege that her asthma significantly affected her activities."  AR 21.  The ALJ's stated reasons are not supported by the record.

Dr. Sidrick provided treatment notes from seven different examinations and a report from

May 12, 2014, none of which are "check off lists" as described by the ALJ.  See AR 230-38, 250-53.  These notes consistently document that Plaintiff sought treatment for asthma, headaches, depression, and low back and left knee pain.  Id.  Notably, Dr. Sidrick's treatment notes from July 30, 2013 were updated on August 9, 2013 and specifically reference Plaintiff's left knee and lumbosacral spine x-rays from August 5, 2013 and indicate that Plaintiff's "back and left knee show arthritis."  AR 252; see also AR 260-61 (imaging results from Plaintiff's August 5, 2013 x-rays).  Dr. Sidrick reiterates these findings in her May 12, 2014 report, where she opines that Plaintiff "has been suffering from chronic neck, low back, and head pain" and "has arthritis and chronic bilateral knee pain radiating to the lower extremities."  AR 279.  Further, while Dr. Sidrick's notes opine that Plaintiff's asthma was "stable" on two occasions, Dr. Sidrick treated Plaintiff for asthma problems on July 3, 2013, noting that it was "on/off" and on May 2, 2013, November 30, 2012, October 12, 2012, and April 3, 2012, making no comment regarding whether it was stable during those visits, only remarking that Plaintiff sought treatment for the ailment.  See AR 253-56.  Lastly, although Dr. Sidrick's notes do not go into great detail regarding Plaintiff's mental limitations, the ALJ should have considered them in conjunction with Dr. Henderson's and Lessner's reports.  Clay, No. 14cv2893-BAS(BLM), 2017 WL 1478618, at *7 (holding that an ALJ must consider other relevant factors such as "the amount of relevant evidence that supports the opinion" when assigning weight to a treating physician's opinion) (citation and quotation omitted).  Dr. Sidrick's treatment notes document that Plaintiff consistently sought treatment for physical and mental ailments and that those ailments are supported by evidence in the record, including laboratory findings.  As such, there is not clear and convincing evidence in the record supporting the ALJ's decision to give Dr. Sidrick's opinions little weight.

The ALJ gave little weight to the opinion of Dr. Grisolia because "it is unclear on what basis Dr. Grisolia made his determination, as he makes no specific reference to any clinical or laboratory findings."  AR 22.  The ALJ explains that Dr. Grisolia's "clinical findings are not found in the longitudinal records" despite two requests from the Social Security Administration.  AR 22.  The ALJ is correct that the administrative record does not contain any examination notes or

10

documents from Dr. Grisolia other than his August 31, 2013 letter.  AR 258.  However, the letter indicates that Dr. Grisolia treated Plaintiff for an extended period of time and provides detailed opinions regarding her medical problems and limitations.  Id.

An ALJ has a duty to develop the record (1) when there is ambiguous evidence or (2) when the record is inadequate to allow for proper evaluation of the evidence.  Mayes, 276 F.3d at 459-60; see also Rivera v. Berryhill, No. ED CV 16-791-SP, 2017 WL 5054656, at *3 (C.D. Cal. Oct. 31, 2017) ("If the ALJ thought he needed to know the basis of [a doctor's] opinion [] in order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician[] or submitting further questions to [him or her].") (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)).  Here, the ALJ made minimal efforts to ensure the adequacy of the record; instead, he merely discredited the opinion.  The ALJ did not question Plaintiff about Dr. Grisolia's care, did not subpoena Dr. Grisolia to testify at the hearing, did not submit specific questions to Dr. Grioslia, etc.  See AR 33-50, 242-44. The ALJ states that "two requests for medical records were made by Social Security", but the administrative record only contains one request.  See AR 242-44; see also 20 C.F.R. § 404.1512(b)(i) (An ALJ must make every reasonable effort to help a claimant obtain medical evidence from his or her medical sources, which includes an initial request for evidence from a claimant's medical sources and a follow-up request.).  The ALJ's effort to ensure the adequacy of the record in this case is not sufficient to constitute a clear and convincing reason for rejecting the detailed opinions of this treating physician, especially at step two of the analysis.[2]

The ALJ gave little weight to the opinion of Dr. Henderson because it lacked supporting treatment records and because his opinion appears to be largely based on Plaintiff's subjective complaints.  AR 25.  Additionally, the ALJ explained that Dr. Henderson's report was given little weight because it relied on the medical opinions of Drs. Lessner and Grisolia, both of whom provide opinions "mostly based upon [Plaintiff's] subjective complaints and [which are] not

---

[2] The ALJ's failure in this regard is even more egregious since the State agency doctors stated that the record was inadequate and did not enable them to provide a substantive opinion.  AR 51-62.

1   consistent with the objective medical records" and because Plaintiff "received relatively

2   conservative treatment for her symptoms." AR 25.   Lastly, the ALJ gave Dr. Henderson's GAF

3   assessment little weight because it is "based primarily on [Plaintiff's] subjective complaints,

4   which has been determined to be not fully credible and is not supported by the totality of the

5   medical evidence." AR 25-26.  The ALJ's determination to give Dr. Henderson's opinions little

6   weight fails for multiple reasons.

7          Initially, the Court notes that in forming his opinions, Dr. Henderson considered his own

8   treatment of Plaintiff as well as the medical records provided by Drs. Sidrick, Lessner, and

9   Grisolia.  AR 281.  As explained elsewhere in this Report and Recommendation, the Court finds

10  that the ALJ failed to provide an adequate reason for discounting the opinions of those doctors

11  so Dr. Henderson's reliance on the opinions and records supporting those opinions does not

12  constitute a clear and convincing reason for discounting Dr. Henderson's opinion.  Similarly, the

13  Court rejects the ALJ's complaint that Dr. Henderson did not provide all of his prior treatment

14  records because as with Dr. Grisolia, the ALJ made minimal, if any, effort to obtain these records

15  and ensure the adequacy of the record as to this treating physician.  Additionally, contrary to

16  the ALJ's reasoning, Drs. Sidrick's and Lessner's medical opinions and records do corroborate

17  Dr. Henderson's statements.   For example, Dr. Henderson diagnosed Plaintiff with major

18  depression that would "prevent her from absorbing new information." AR 282.  Similarly, Dr.

19  Sidrick opined in her May 12, 2014 report [AR 279] that Plaintiff had memory impairment and

20  noted depression and memory impairment on multiple occasions in her treatment notes.  AR

21  250-51, 253-55.  Dr. Lessner also diagnosed Plaintiff with depression and noted Plaintiff's "poor

22  memory" in his June 9, 2014 report.  AR 273, 276.  The ALJ's reliance on the fact that Plaintiff

23  received "relatively conservative" treatment also does not constitute a valid reason to reject Dr.

24  Henderson's opinions because as discussed above, Plaintiff did not have the financial resources

25  to obtain specialized or consistent treatment.  Finally, as discussed below, the Court finds that

26  the ALJ's reasons for dismissing Plaintiff's subjective complaints were legally insufficient.

27  ///

28  ///

17-cv-2521-DMS(BLM)

### 3.   Examining Physician Opinion

At the request of Dr. Henderson, Dr. Lessner examined Plaintiff, reviewed the medical records from Dr. Grioslia, and issued a report finding that Plaintiff's impairments include "Major Depression with psychotic features, Post Traumatic Stress Disorder; Schizoid Personality Disorder; Hypertension, asthma, arthritis, head and back pain; Social, physical, emotional, psychotic health problems; [and a] GAF [score of] 30." AR 276.  In his report, Dr. Lessner provided his general observations of Plaintiff, including her complaints, appearance during the examination, background, family history, activities of daily living, and medications.  AR 266-71. Dr. Lessner also identified the tests he administered to Plaintiff, including the Mooney Problem Check List, Rotter Incomplete Sentence Blank, Bender Gestalt Test, Minnesota Multiphasic Personality Inventory, and the Beck Depression Inventory and the results he obtained.  AR 271-78.

The ALJ gave little weight to Dr. Lessner's opinion, stating that "Dr. Lessner's opinion was not supported by the conservative and routine treatment received by [Plaintiff]" and because Dr. Lessner's evaluation primarily consisted of Plaintiff's "anecdotal personal and family history accompanied by subjective statements of [Plaintiff's] mental condition." AR 25.  Further, the ALJ discounted Dr. Lessner's opinion because he did not provide a function-by-function assessment of Plaintiff's mental functional capacity and did not provide a basis "as to how [Plaintiff's] impairments actually limit her ability to work." AR 25.  The ALJ also assigned little weight to the GAF score assigned by Dr. Lessner because it was "based primarily on [Plaintiff's] subjective complaints" which the ALJ "determined to be not fully credible and is not supported by the totality of the medical evidence." AR 25-26.

There is not substantial evidence supporting the ALJ's decision to give little weight to Dr. Lessner's uncontradicted opinion.  First, Dr. Lessner's opinions are not primarily based on Plaintiff's subjective statements and anecdotes.  Dr. Lessner's psychological assessment of Plaintiff included multiple psychological tests and their results.  Id. at 267-76.  Dr. Lessner explained the results of each test and how the results interplay with Plaintiff's statements.  For example, Dr. Lessner explained that Plaintiff's "exceedingly high infrequency scale score

17-cv-2521-DMS(BLM)

(Validity-MMPI-2) may indicate that [she] may be exaggerating her symptoms *as a plea for help*," that "her responses [] establish a pattern [indicating] that she is harboring considerabl[e] psychopathology" that include a "number of bizarre symptoms, deviant responses, anomalies and incongruities," and that she "show[s] signs of aberrant behavior that is seriously handicapping her." AR 272 (emphasis added). Dr. Lessner continued that "[a]n item analysis of her Bizarre Mentation Scale (MMPI-2) provides evidence of delusions and hallucinations" and that "[s]ometimes she sees animals, people, or things around her that others fail to see", and that "[s]he may hear voices without knowing where they are coming from." Id. at 274. As such, although Dr. Lessner's opinions consider Plaintiff's subjective testimony, they are based on Plaintiff's test results, medical record, activities of daily living, and appearance at the examination. Second, for the reasons discussed elsewhere in this Report and Recommendation, there is not substantial evidence supporting the ALJ's decision to discount Dr. Lessner's opinions because Plaintiff received conservative treatment and because Plaintiff is not fully credible. Third, there is not substantial evidence supporting the ALJ's decision to discount Dr. Lessner's opinion regarding the GAF score because it was premised on Plaintiff's unreliable subjective statements. GAF scores are, as is the case here, properly used by physicians to diagnose patients, which can constitute objective medical evidence of impairment. See Jacqueline B. v. Berryhill, No. EDCV 18-0104-KS, 2019 WL 1557448, at n. 15 (C.D. Cal. Apr. 10, 2019) ("Medical opinions and diagnoses based on clinical observations are acceptable forms of evidence that can show mental disability.") (citing Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). Finally, although the Court agrees with the ALJ that Dr. Lessner failed to provide a function-by-function assessment of Plaintiff's mental functional capacity, this alone does not justify assigning little weight to Dr. Lessner's report. See 20 C.F.R. § 416.927 (the following factors will be considered in deciding the weight given to any medical opinion: examining relationship, treating relationship, length of the treatment relationship and the frequency of examinations, nature and extent of the treatment relationship, supportability, consistency, specialization, etc.)

///

///

17-cv-2521-DMS(BLM)

### 4. State Agency Opinions

Plaintiff argues the ALJ improperly rejected the medical opinion of State agency medical examiner, Dr. G. Spinka.  ECF No. 41-1 at 5.  Defendant contends that "the ALJ did not expressly address Dr. Spinka's determination" but nevertheless "thoroughly explained why he found Plaintiff's impairments not severe."  ECF No. 44 at 6-7.

### Analysis

The ALJ assigned partial weight to the assessments of State agency medical consultants Dr. M. Yee and G. Spinka, who reviewed Plaintiff's medical records, and determined that "there was insufficient evidence in the medical record to adjudicate the claim."  AR 21; see also AR 51-63.  The ALJ reasoned that although the State agency "consultants' determinations were consistent with the lack of treatment records, they did not review all of the medical records and all of the claimant's subjective statements."  AR 21.

Plaintiff contends this was improper because Dr. Spinka determined that Plaintiff suffered from a severe medically determinable impairment of severe asthma and severe osteoarthrosis and allied disorders.  ECF No. 41-1 at 5-6; see also AR 60-61.  The Court disagrees with Plaintiff's argument.  The reports from Drs. Yee and Spinka repeatedly state that there is no medical evidence to review so there is "insufficient evidence for adjudication."  AR 60; see generally AR 51-62.  While Dr. Spinka's report does list "osteoarthritis and allied disorders" and "asthma," it concludes that there is "insufficient evidence to evaluate the claim."  Id. at 60-61.

Plaintiff also argues that the ALJ erred by substituting his own opinion for that of the doctors.  ECF No. 41-1 at 16-17.  The Court agrees with Plaintiff's concern.  The ALJ clearly stated that he was rejecting the State agency consultants' opinions and replacing it with his own opinion:

> According to the State agency medical consultants, there was insufficient evidence in the medical record to adjudicate the claim (Exs. 1A, p. 4 and 3A, pp. 4).  Although the medical consultants' determinations were consistent with the lack of treatment records, they did not review all of the medical records and all of the claimant's subjective statements.  However, as indicated above, the undersigned has reviewed all of the evidence in the medical record and has considered the claimant's subjective complaints in determining that the medically determinable impairments are nonsevere.

17-cv-2521-DMS(BLM)

As such, the ALJ erred by substituting his own lay opinion for those of the doctors.  See 20 C.F.R. § 404.1513(a)(1) (decision regarding claimant's medically determinable impairments should be based upon determinations made by an "acceptable medical source," such as a licensed physician); see also Christopher v. Saul, No. EDCV 18-2478 JC, 2019 WL 3428545, at *6 (C.D. Cal. July 30, 2019) (citing Gonzalez Perez v. Sec'y. of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician")).

### 5.   Conclusion

The ALJ assigned little weight to the opinions of Plaintiff's three treating physicians, an examining physician, and two State agency reviewers without identifying a single contradictory medical opinion.  All of the doctors either identified severe impairments and limitations or opined that there was insufficient evidence to evaluate Plaintiff's claims.  As such, this case does not involve "groundless claims" that should be rejected at step two of the analysis.  See Tadesse, No. 20-16064, 2021 WL 5600149, at *1.  Moreover, the ALJ failed to make sufficient efforts to ensure the adequacy of the record and to conduct an appropriate inquiry.  Finally, the ALJ failed to provide substantial evidence to support his decision at step two that the medical evidence clearly established that Plaintiff was not disabled.  See Perez, 855 Fed. Appx. 365, 366 (9th Cir. 2021) (citing Lester, 81 F.3d at 830-31); see also Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014).

### B.   Plaintiff's Statements

Plaintiff argues that the ALJ's finding that she was not credible was improper and not supported by substantial evidence.  ECF No. 41-1 at 17-19.  While Defendant contends that the ALJ provided sufficient reasons for rejecting Plaintiff's subjective complaints, Defendant provides very little analysis and merely states that the identified reasons are permissible reasons. ECF No. 44 at 10-11.

///

///

///

1          1.      Relevant Law

2          The Ninth Circuit has established a two-part test for evaluating a claimant's subjective

3    symptoms.  See Zuniga v. Saul, 801 Fed. Appx. 465, 466 (9th Cir. 2019) (citing Vasquez v.

4    Astrue, 572 F.3d 586, 591 (9th Cir. 2009)).  First, the ALJ "must determine whether the claimant

5    has presented objective medical evidence of an underlying impairment which could reasonably

6    be expected to produce the pain or other symptoms alleged." Id. (quoting Lingenfelter v. Astrue,

7    504 F.3d 1028, 1036 (9th Cir. 2007)).   The claimant need not prove that the impairment

8    reasonably could be expected to produce the alleged degree of pain or other symptoms; the

9    claimant need only prove that the impairment reasonably could be expected to produce some

10   degree of pain or other symptom.  See Garrison, 759 F.3d 995, 1014 (quoting Smolen, 80 F.3d

11   at 1282).  If the claimant satisfies the first element "and there is no evidence of malingering,

12   the ALJ can only reject the claimant's testimony about the severity of her symptoms if she gives

13   'specific, clear and convincing reasons' for the rejection." Zuniga, 801 Fed. Appx. at 466 (quoting

14   Lingenfelter, 504 F.3d 1028, 1036).  "General findings are insufficient, rather, the ALJ must

15   identify what testimony is not credible and what evidence undermines the claimant's

16   complaints." Roberts v. Saul, 829 Fed. Appx. 757, 760 (9th Cir. 2020) (quoting Lester, 81 F.3d

17   at 834 (9th Cir. 1995)).  The ALJ's findings must be "sufficiently specific to permit the court to

18   conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." Werlein v. Berryhill,

19   725 Fed. Appx. 534, 535 (9th Cir. 2018) (quoting Tommasetti, 533 F.3d at 1039 (quoting

20   Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)).

21          When weighing the claimant's testimony, "an ALJ may consider . . . reputation for

22   truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities,

23   and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed

24   course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks

25   and citation omitted).  An ALJ also may consider the claimant's work record and testimony from

26   doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which

27   the claimant complains.  Lenhart v. Astrue, 252 Fed. Appx. 787, 788 (9th Cir. 2007) (quoting

28   Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)); see also 20 C.F.R. § 404.1529(c).

If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper).

  2. <u>Analysis</u>

  In the first part of the analysis, the ALJ identified the following subjective symptoms asserted by Plaintiff:

> The claimant stated in her disability report that her hypertension, cholesterol, arthritis in her extremities, numbness and tingling her extremities, asthma, chest pain, fever whenever the weather changes, insomnia, poor memory, nightmares, and post-traumatic stress disorder limit her ability to work (Ex. 3E, p. 2). Additionally, the claimant reported her physical and mental limitations in her Adult Function Report (Ex. 4E, pp.10-17). Furthermore, the claimant testified that she has aches and pains all over her body; including pain in her head, back, knees, legs, and feet.

AR 19.  The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  Id.  Neither the ALJ nor either party contends that Plaintiff was malingering.  Id.; ECF Nos. 41, 44, 45.  Accordingly, the ALJ must provide "specific, clear and convincing reasons" to reject Plaintiff's claims.  Zuniga, 801 Fed. Appx. at 466.  The Court will consider each of the ALJ's reasons.

  First, the ALJ discounted Plaintiff's claims because there were "numerous inconsistent and/or unsupported statements asserted."  AR 19.  The ALJ explained that, during the administrative hearing, Plaintiff initially testified she had not worked for ten years, but when questioned further, admitted that she worked for a month or two in 2010 doing janitorial work. AR 19, 38.  Later, Plaintiff testified that her janitorial job lasted for about one year.  AR 19, 38. The ALJ noted that her disability report indicated that she worked with her brother as a painter in 2010 and that a "psychological evaluator" reported that Plaintiff said she had operated an ice cream truck for about 10 years.  AR 19, 268.  The ALJ concluded that the evidence regarding

Plaintiff's employment "raises a question as to whether the [Plaintiff's] continuing unemployment is actually due to medical impairments." AR 20.  While inconsistent testimony can be a basis to discount Plaintiff's testimony, the identified misstatements, especially in light of Plaintiff's language difficulties as she testified with the assistance of a Vietnamese interpreter [AR 35], do not constitute clear and convincing evidence to reject all of Plaintiff's subjective symptoms at step two.  See Novikov v. Astrue, No. C07-5415BHS, 2008 WL 4162941, at *5 (W.D. Wash. Sept. 2, 2008) (where the hearing transcript indicates that a claimant was unable to adequately make him or herself understood, the record as a whole cannot be said to be complete.).  The Court also notes that the ALJ failed to ask Plaintiff about her employment operating an ice cream truck and made minimal efforts to clarify the ambiguous/conflicting employment evidence.  See AR 35-50; see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry.") (citation and quotation omitted).  Finally, because the ALJ discounted all of the medical evidence and opinions, the ALJ did not consider whether Plaintiff's mental impairments impacted or caused the memory lapses that the ALJ then used to find Plaintiff's testimony not credible.  Havsgaard v. Saul, No. 1:18-cv-00944-GSA, 2020 WL 1330204, at *9 (E.D. Cal. Mar. 23, 2020) ("an ALJ must consider the combined effect of all of the claimant's impairments on his or her ability to function") (citing Smolen, 80 F.3d at 1290).

Second, the ALJ found that some of Plaintiff's "statements regarding the severity of her disability were inconsistent with her activities of daily living."  AR 20.  Specifically, the ALJ focused on Plaintiff's testimony that she can go to the grocery store, cook for herself, drive sometimes, and occasionally attend religious study with her children.  Id.  While inconsistencies with activities of daily living can be a basis for discounting Plaintiff's testimony, "[t]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled."  Vertigan v. Halter, 260, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation and quotation omitted); see also Smith

17-cv-2521-DMS(BLM)

v. Saul, 820 Fed. Appx. 582, 585 (9th Cir. 2020) (same); Revels v. Berryhill, 874 F.3d 648, 660, 667-68 (9th Cir. 2017) (same); Benecke v. Barnhart, 379 F.3d 587, 592-94 (9th Cir. 2004) (same). The ALJ then makes a general finding that "the described activities of daily living . . . are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 20. This general finding, without any discussion of skills that are transferable to a work setting, is insufficient. See Roberts, 829 Fed. Appx. at 760; Orn, 495 F.3d at 639 (an ALJ may discount a claimant's statements if the claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.") The ALJ also discredited Plaintiff's testimony because Plaintiff lives alone, "which typically involves maintaining the residence and doing various household chores." AR 20. This unsupported assumption also does not provide the required specific, clear and convincing reason for discounting Plaintiff's complaints.

Third, the ALJ found that some of Plaintiff's "allegations in her testimony, disability report, and Adult Function Report were not consistent with her presentation at the hearing." AR 19. For example, the ALJ noted that Plaintiff indicated that her medications made her sleepy and that her medical ailments affected her memory, concentration, and understanding, but that Plaintiff "was still able to independently answer most of the questions through the interpreter during the administrative hearing." AR 20. During the administrative hearing, the ALJ did not ask Plaintiff whether she was taking the prescribed medications that caused sleepiness. See AR 33-50. In addition, Plaintiff's treating physician, Dr. Sidrick, opined in a May 12, 2014 report that Plaintiff "is taking potent medications for psychiatric impairments that cause sedation." AR 279. Similarly, Dr. Lessner opined in his June 9, 2014 report that Plaintiff's "highest clinical scale score (8) (MMPI-2)… seems to imply that [Plaintiff] is confused, disorganized, disoriented, and shows very poor judgment" and that some of the characteristics of her dilemma include "confused thinking, difficulties with concentration, and a poor memory." AR 273. Although an ALJ's observations may be used "in the overall evaluation of the credibility of a [claimant's] statements" they cannot be the sole reason for discrediting a claimant's testimony. See Orn, 495 F.3d at 639-40; see also Jones v. Berryhill, 720 Fed. Appx. 851, 852 (9th Cir. 2017) (same).

17-cv-2521-DMS(BLM)

While the reasons provided by the ALJ may provide a basis to discount some of Plaintiff's claims, the ALJ has not provided substantial evidence to meet the clear and convincing standard, especially at a step two determination and in light of the significant objective medical evidence discussed above.  See Webb, 433 F.3d at 687 (finding an ALJ improperly rejected a claimant's subjective complaints at step two in light of the treating doctor's "contemporaneous observations, some objective tests and [claimant's] subjective complaints"); Werlein, 725 Fed. Appx. at 535 (an ALJ's reasons for discrediting Plaintiff's credibility must be "sufficiently specific to permit the [C]ourt to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony").

C.     Third-Party Statements

Plaintiff argues that the ALJ's finding that her son's lay testimony was not credible was improper.  ECF No. 41-1 at 19.  Defendant does not address this argument.  ECF No. 44.

1.     Relevant Law

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." Id.; see also 20 C.F.R. § 416.913. "Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." K.F. v. Kijakazi, No. 20-cv-08629-LB, 2022 WL 207661, at *8 (N.D. Cal. Jan. 24, 2022) (quoting Sprague, 812 F.2d at 1232).  To disregard lay witness testimony, an ALJ must provide specific reasons that are "germane to that witness." Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (internal citations omitted); see also Bayliss v. Barnhart, 427 F.3d 1211, 1211 (9th Cir. 2005) (holding that "inconsistency with medical evidence is one [germane] reason" to reject lay witness testimony).

///

///

///

///

17-cv-2521-DMS(BLM)

2. <u>Analysis</u>

Plaintiff's son, Thai Bui, completed a Third-Party Function report on May 14, 2012.  AR 170-77.  In his report, Mr. Bui stated that, prior to her illness, Plaintiff was able to do household chores.  AR 171.  However, since becoming ill, she has trouble sleeping, needs to be reminded to bathe daily, to eat, to take her medication, and to change clothes. AR 171-72.  Mr. Bui also stated that Plaintiff does not prepare her own meals or perform household chores, and only goes outside a few times a month "to keep up with doctors' appointments."  AR 173.  Plaintiff's Adult Function Report largely mirrors Mr. Bui's.  AR 178-85.

In discounting Mr. Bui's report, the ALJ stated that Mr. Bui's statements "were not given under oath "and essentially reiterate[] [Plaintiff's] subjective statements in her disability report, Adult Function Report and in her testimony."  AR 22.  The ALJ also noted that some of Mr. Bui's statements contradict Plaintiff's statements, including that "his mother does not do any household chores, does not have a driver's license, and does not go shopping."[3]  <u>Id.</u>  For these reasons, the ALJ gave little weight to Mr. Bui's report.  <u>Id.</u>

The ALJ's first reason for discounting Mr. Bui's observations constitutes legal error because "an ALJ may not reject lay witness statements on the grounds that they were not made under oath."  <u>Taylor v. Colvin</u>, No. 1:14-cv-01033-JLT, 2016 WL 704352, at *16 (E.D. Cal. Feb. 23, 2016) (quoting <u>Bush v. Colvin</u>, 2015 U.S. Dis. LEXIS 14762 at *10, n.2 (E.D. Cal. Oct. 26, 2015) (explaining that "Social Security law does not require, or even suggest, that lay witness statements have to be made under oath" and "[i]n fact, the form that the Social Security Administration provides to claimants for documenting lay witness statements, Form SSA 3380-BK, does not include an oath" nor does it "even require a signature.").  The ALJ's second reason is not supported by substantial evidence and was improperly resolved at step two.  The ALJ

---

[3] During Plaintiff's administrative hearing on July 30, 2014, Plaintiff testified that she has a driver's license in order to drive her kids to school.  AR 43.  When the ALJ inquired further, Plaintiff advised that her youngest child was "20 something" and that she no longer takes them to school, but that sometimes she drives by herself.  AR 43.  Plaintiff also testified that she could go to the grocery and cook for herself.  AR 44.

17-cv-2521-DMS(BLM)

discounted Mr. Bui's observations because they both mirrored and contradicted Plaintiff's statements.  And, as with Plaintiff's statements, the ALJ did not consider or address the medical opinions, especially regarding Plaintiff's mental impairments, which could explain the inconsistencies related to Plaintiff's statements.  See AR 273 (Dr. Lessner opined that Plaintiff's mental impairment causes "confused thinking, difficulties with concentration, and a poor memory.").  Finally, to the extent the ALJ rejected Mr. Bui's observations because they were consistent with Plaintiff's statements, which the ALJ found were not credible, this reason is not valid for the reasons set forth above.  See supra Section I.B.

### D.    Conclusion

Although it is unclear whether Plaintiff will succeed in proving her disability, it is clear that the ALJ lacked substantial evidence to find that the medical evidence clearly established Plaintiff's lack of a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities.  The ALJ should have continued the sequential analysis beyond step two because there was not substantial evidence to show that Plaintiff's claim was "groundless." See Smolen, 80 F.3d at 1290.

## II.    REMAND AND REVERSAL

The decision whether to remand for further proceedings or simply to award benefits is within the discretion of the court.  See Aida I. v. Saul, No. 3:19-cv-00476-AJB-RNB, 2020 WL 434319, at *5 (S.D. Cal., Jan. 28, 2020) (noting that "[t]he law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court.") (citing  Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); and Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)).  Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. See Gerde v. Berryhill, 717 Fed. Appx. 674, 677 (9th Cir. 2017) ("[r]emand for further administrative proceedings to consider Dr. Alvord's opinion and the lay witness testimony is the proper remedy because enhancement of the record would be useful.") (citing Benecke, 379 F.3d at 593  ).  On the other hand, if the record has been fully developed such that further administrative proceedings would serve no purpose, "the district court should

remand for an immediate award of benefits." <u>Benecke</u>, 379 F.3d at 593. "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." <u>Id.</u> (citing <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000)).   The Ninth Circuit has not definitely stated whether the "credit-as-true" rule is mandatory or discretionary.  See <u>Vasquez</u>, 572 F.3d at 593 (acknowledging that there is a split of authority in the Circuit, but declining to resolve the conflict); <u>Luna v. Astrue</u>, 623 F.3d 1032, 1035 (9th Cir. 2010) (finding rule is not mandatory where "there are 'outstanding issues that must be resolved before a proper disability determination can be made'" (internal citation omitted)); <u>Shilts v. Astrue</u>, 400 F. App'x 183, 184-85 (9th Cir. Oct. 18, 2010) (explaining that "evidence should be credited as true and an action remanded for an immediate award of benefits only if [the <u>Benecke</u> requirements are satisfied]" (internal citation omitted)).  "Even if all three requirements are met, the Court retains flexibility to remand for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" <u>Nichols v. Saul</u>, No. 19cv490-BEN-LL, 2019 WL 6252934, at *10 (S.D. Cal., Nov. 22, 2019) (quoting <u>Brown-Hunter</u>, 806 F.3d at 495).  A remand for an immediate award of benefits is appropriate only in rare circumstances.  <u>Id.</u>

Here, based on the record before it, the Court concludes that the rare circumstances that may result in a direct award of benefits are not present.  See <u>Leon v. Berryhill</u>, 880 F.3d 1041, 1044 (9th Cir. 2017) ("[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule"); <u>see also</u> <u>Howland v. Saul</u>, 804 Fed. Appx. 467, 471 (9th Cir. 2020) (same).  Instead, the Court finds further administrative proceedings will serve a meaningful purpose by allowing the ALJ to properly consider and address the medical opinions provided by Plaintiff's treating and examining doctors and further develop the record where necessary.  Remand will also allow the ALJ to continue the five-step

evaluation process beyond step two to determine Plaintiff's RFC and whether there are jobs she can perform.  Accordingly, this Court **RECOMMENDS REVERSING** the decision of the ALJ and **REMANDING** for further proceedings to address the errors noted above.

### CONCLUSION

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED**, and Defendant's Cross-Motion for Summary Judgment be **DENIED**, and the case be **REMANDED** for further proceedings.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **April 8, 2022**.  The document should be captioned "Objections to Report and Recommendations."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 22, 2022**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Yist, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  3/29/2022

Hon. Barbara L. Major
United States Magistrate Judge

17-cv-2521-DMS(BLM)